**Opinion filed December 30, 2022**



In The

# Eleventh Court of Appeals

_____

## No. 11-21-00095-CR

_____

## HAI PHU NGUYEN, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 358th District Court**

**Ector County, Texas**

**Trial Court Cause No. D-19-1893-CR**

## M E M O R A N D U M   O P I N I O N

Hai Phu Nguyen, Appellant, challenges his conviction for tampering with evidence with intent to impair an investigation. *See* TEX. PENAL CODE ANN. § 37.09(a)(1) (West Supp. 2022). The jury assessed punishment at seven years in the Correctional Institutions Division of the Texas Department of Criminal Justice and a fine of $5,000, and it recommended that the confinement portion of Appellant's sentence be suspended. The trial court sentenced Appellant accordingly

and placed him on community supervision for a term of seven years. In his sole issue on appeal, Appellant argues there is insufficient evidence to support his conviction. We affirm the judgment of trial court.

*Factual and Procedural History*

In the early morning hours of August 10, 2019, Appellant drove Joey Cross through the streets of Odessa to the house of Cross's two victims: Rodolfo Martinez and Daisy Coria. Appellant's relationship to Cross is not clear from the evidence; Cross described Appellant as "an Uber driver," but Appellant became Facebook friends with Cross a few weeks prior to the incident. Appellant stated that Cross knew Appellant kept a shotgun in the back of his car, but Appellant had a difficult time describing Cross and was uncertain that "Joey" was his real name.

During the drive, Cross sat in the back seat of Appellant's car with Appellant's shotgun. As they approached the victims' home at 1201 North Sam Houston, Cross rolled down the window and fired a single shot, hitting both victims. Dispatch for the City of Odessa received a 9-1-1 call from Daisy Coria about the assault at 3:07 a.m. After Cross fired the shot, Appellant drove away. Appellant did not go directly home; instead, Appellant dropped Cross off somewhere between 4th and 9th Street in Odessa. Cross wanted to keep the shotgun, but Appellant did not let him.

Appellant later told police that, about fifteen blocks south of his home, he threw the shotgun used in the shooting out the window, into some trees near the intersection of 42nd Street and West County Road. The shotgun was never located. During an interview with Detective Samuel Chavez, Appellant mentioned that when he threw the gun out of the car, he was on the phone with Corporal Aguirre.

Around 3:45 a.m., while still driving, Appellant received a phone call from Corporal Jaime Aguirre of the Odessa Police Department. Appellant told Corporal Aguirre that Appellant was "traveling northbound on FM 1936 by West 26th Street." Appellant hung up for an undisclosed reason, and Corporal Aguirre called Appellant

2

a second time at 4:17 a.m. Appellant stayed on the phone with Corporal Aguirre until he returned to his home on 57th Street, where Corporal Aguirre was waiting for him. Once Appellant exited the vehicle, he was detained and, shortly thereafter, arrested for assault with a firearm and tampering with evidence. Prior to Appellant's arrest, Corporal Aguirre did not mention that the purpose of his call was to investigate a shooting.

At trial, Appellant was charged with two counts of aggravated assault with a deadly weapon and one count of tampering with evidence. The jury found Appellant not guilty of the two counts of aggravated assault and guilty of the tampering charge.[1]

On appeal, Appellant challenges the conviction on the basis of insufficient evidence. Specifically, he contends that there was legally insufficient evidence that he was aware of a pending investigation at the time he disposed of the gun. *See* PENAL § 37.09(a)(1).

*Standard of Review*

We review a challenge to the sufficiency of the evidence supporting a criminal conviction, regardless of whether it is framed as a legal or factual sufficiency challenge, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319.

---

[1]Count three of the indictment and the jury charge tracked the language of Section 37.09(a)(1) of the Texas Penal Code.

Viewing the evidence in the light most favorable to the verdict requires that we consider all the evidence admitted at trial, including improperly admitted evidence. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's credibility and weight determinations because the factfinder is the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899. The *Jackson* standard is deferential and accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the facts. *Jackson*, 443 U.S. at 319; *Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018); *Clayton*, 235 S.W.3d at 778. We may not reevaluate the weight and credibility of the evidence to substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Therefore, if the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012); *Clayton*, 235 S.W.3d at 778.

Each fact need not point directly and independently to the guilt of Appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). By its very nature, mens rea must generally be inferred from the circumstances. *Nisbett v. State*, 552 S.W.3d 244, 267 (Tex. Crim. App. 2018) (noting that, "absent a confession, we must infer [an accused's] mental state from his 'acts, words[,] and conduct'"). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). In short, "courts of appeals should . . . determine whether the necessary inferences are

reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper*, 214 S.W.3d at 16–17.

*Section 37.09(a)(1)*

Section 37.09(a)(1) of the Texas Penal Code requires evidence that the actor *knew* that an investigation or official proceeding was *pending* or was in progress. PENAL § 37.09(a)(1) (emphasis added); *see Stahmann v. State*, 602 S.W.3d 573 (Tex. Crim. App. 2020); *Williams v. State*, 270 S.W.3d 140, 142 (Tex. Crim. App. 2008). The tampering-with-physical-evidence statute, Section 37.09 of the Penal Code, states in relevant part as follows:

> (a) A person commits an offense if, knowing that an investigation or official proceeding is pending or in progress, he:
>
>> (1) alters, destroys, or conceals any record, document, or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding;

In the context of this case, the State had to prove either that (1) knowing that an investigation or official proceeding was pending or in progress, (2) Appellant altered, destroyed, or concealed the shotgun used in the shooting, (3) with the intent to impair its verity or availability as evidence in the investigation or official proceeding. *See Stahmann*, 602 S.W.3d at 576.

Proof of knowledge or intent is an inference that may be drawn by the factfinder both from direct evidence and from evidence of the circumstances surrounding the act. *Dillon v. State*, 574 S.W.2d 92, 94–95 (Tex. Crim. App. [Panel Op.] 1978). A jury may infer intent or knowledge from any facts which tend to prove its existence, including the acts, words, and conduct of the accused and the method of committing the crime. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002). "Indeed, mental culpability is of such a nature that it generally must be inferred from the circumstances under which a prohibited act or admission occurs."

5

*Smith v. State*, 965 S.W.2d 509, 518 (Tex. Crim. App. 1998); *see also Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999) (Meyers, J., concurring).

"Pending" in the tampering statute means "impending, or about to take place." *Lumpkin v. State*, 129 S.W.3d 659, 663 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd); *see Ochoa v. State*, No. 07-18-00045-CR, 2019 WL 1870108, at *4 (Tex. App.—Amarillo April 25, 2019, (not designated for publication) (discussing the definition of "investigation," "pending" and "in progress"). It is reasonable for a jury to infer that a defendant is aware of a pending investigation based on an offense that they themselves have committed or in which they were directly involved. *Lumpkin*, 129 S.W.3d at 663; *see Stahmann v. State*, 548 S.W.3d 46, 58 (Tex. App.—Corpus Christi–Edinburg 2018), *aff'd*, 602 S.W.3d 573 (Tex. Crim. App. 2020) ("The jury could have reasonably inferred that, having just been involved in a high-speed collision causing injury, Stahmann knew that a police investigation into the accident was about to take place when he threw the pill bottle.").

*Analysis*

Appellant contends that the evidence is not sufficient to show that he had the requisite knowledge of a pending investigation to be convicted under Section 37.09(a)(1). Importantly, Appellant confessed to being in the car when Cross shot the victims. Having witnessed a violent assault perpetrated by the use of his own gun, being the getaway car driver who took the shooter to the scene at 3:00 a.m., then taking personal possession of the weapon, dropping off the shooter and claiming to have discarded the gun in a wooded area—which, after at least two searches by law enforcement, resulted in the loss of the deadly weapon and the loss of evidence therefrom, a jury could have rationally found that Appellant concealed the gun ("[hid], removed from sight or notice, or kept from discovery or observation") knowing that there would be an investigation even before his phone call with the police. *See Stahmann*, 602 S.W.3d at 581 (quoting *Stahmann*, 548

S.W.3d at 57). Although Appellant himself did not engage in the assault (and was in fact acquitted of that offense), his proximity to the offense and the direct and circumstantial evidence presented would permit a rational jury to find beyond a reasonable doubt that Appellant knew that there was a pending investigation when he disposed of the gun. The jurors were free to reject Appellant's explanation that he was just scared or to believe that under the circumstances he was merely scared of what an impending investigation, sure to come, might show and of how the discovery of his gun might affect his or even the shooter's prosecution and conviction for his part in the shooting.

Appellant centers his argument around a curated timeline which, he argues, precludes the possibility that he concealed the gun after he knew of any investigation. That argument is dependent on the uncorroborated timing of when (and where) Appellant discarded the gun. If believed, the argument might address knowledge of an "investigation . . . in progress," but it does not exclude knowledge of an "investigation . . . pending"—as permitted under the wording of Section 37.09(a).

Corporal Aguirre's testimony highlighted gaps where Appellant's location is uncertain. During a second phone call, Appellant gave his location to Officer Aguirre as 42nd and West County Road, the location where Appellant claimed to have thrown the gun out of the window. The jury was entitled to doubt the credibility of Appellant as to his testimony on the alleged routes taken and the timing given in discarding the gun. The jury was further entitled to make reasonable inference from the facts and circumstances presented that Appellant was indeed aware of an impending investigation when he disposed of the gun. Where there is a fact question resolved by the jury on Appellant's knowledge of a pending investigation and where Appellant was directly involved in the occurence of the crime, "the evidence should be found sufficient regarding the element of knowledge." *Lumpkin*, 129 S.W.3d

at 663. In fact, viewing the evidence in the light most favorable to the verdict, there is sufficient evidence for a rational juror resolving conflicts in the evidence to conclude beyond a reasonable doubt that Appellant would have received the first phone call *before* arriving at the location where he allegedly left the shotgun and, therefore, that he was aware of an investigation *in progress*, not merely *pending*. We overrule Appellant's sole issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


W. BRUCE WILLIAMS

JUSTICE


December 30, 2022

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Williams, J., and Wright, S.C.J.[2]

Trotter, J., not participating.

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.